UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO.

WILLIE F. MURRAY JR.

18 U.S.C. § 1343
18 U.S.C. § 1028A

OUR CASE: 24-mj-6122-PAB

FILED BY ___SM___ D.C.
Mar 19, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

### INDICTMENT

The Grand Jury charges:

### COUNTS ONE THROUGH SIX
**(Wire Fraud)**

**A.   Introduction**

At all times material to this Indictment:

1.   WILLIE F. MURRAY JR., a resident of West Park, Florida, was the registered agent and manager of Lab Tess, LLC ("Lab Tess"). MURRAY used Lab Tess to submit, and cause to be submitted, false and fraudulent claims for reimbursement to a federal health care benefit program for COVID-19 testing services purportedly provided to specified and supposedly uninsured individuals. MURRAY used the means of identification of certain persons, without their knowledge or consent, in support of these false and fraudulent claims. In fact, Lab Tess did not provide COVID-19 testing services to the persons identified, and

MURRAY was not entitled to receive federal funds paid to Lab Tess as reimbursement on the claims.

2.  Lab Tess LLC, a Florida limited liability company reportedly headquartered in Placida, Florida, was created, owned, and controlled by MURRAY. Through a public website and social media accounts, Lab Tess purported to offer its customers COVID-19 testing, including rapid antigen tests, polymerase chain reaction ("PCR") tests, and antibody tests.

### *Health Resources and Services Administration COVID-19 Uninsured Program*

3.  On January 21, 2020, the U.S. Department of Health and Human Services ("HHS") declared that a public health emergency existed nationwide due to COVID-19.

4.  The Families First Coronavirus Response Act ("FFCRA") was a federal law enacted on or about March 14, 2020, as part of the federal government's initial response to the then-emerging COVID-19 pandemic.

5.  The FFCRA, among other things, appropriated funds to reimburse the cost of providing COVID-19 diagnostic testing and services to individuals without health insurance. These funds, and additional funds appropriated through subsequent legislation to provide testing, treatment, and vaccines to uninsured individuals, were administered by HHS through its agency, the Health Resources and Services Administration ("HRSA").

6.  HRSA distributed these funds through the COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and

Vaccine Administration for the Uninsured Program ("HRSA COVID-19 Uninsured Program"). The HRSA COVID-19 Uninsured Program only covered costs for uninsured patients. Insured patients were ineligible for coverage under the HRSA COVID-19 Uninsured Program.

7. HRSA contracted with Health Insurance Company #1 ("HIC-1"), a private insurance company, to handle claims administration and payments, which HIC-1 performed through its unit Payment Service #1. HRSA provided reimbursements on a rolling basis directly to eligible providers, including laboratories. The HRSA COVID-19 Uninsured Program was a "health care benefit program" as defined in 18 U.S.C. § 24(b).

8. To receive reimbursement under the HRSA COVID-19 Uninsured Program, a provider was required to attest to compliance with the terms and conditions of the program. The terms and conditions required the provider to submit truthful claims, regarding uninsured individuals, and allowed reimbursements only for: (1) COVID-19 testing, which was defined as a test for the detection of SARSCoV-2 or the diagnosis of the virus that causes COVID-19, and/or testing-related items and services such as an office visit or a telehealth visit that resulted in the administration of a COVID-19 test; (2) care or treatment related to positive diagnoses of COVID-19, where COVID-19 was the primary reason for treatment; or (3) administering a COVID-19 vaccination.

9. Providers seeking reimbursement under the HRSA COVID-19 Uninsured Program were required to enroll as a provider participant, check to ensure

that patients were uninsured, submit claims and patient information electronically, and receive payment through direct deposit. Reimbursements were generally made at Medicare rates.

10. Claims submitted electronically to the HRSA COVID-19 Uninsured Program, and payments made from the HRSA COVID-19 Uninsured Program, were transmitted through interstate wires.

11. Financial Institution #1, headquartered in New York, New York, was a financial institution with computer servers used for processing financial transactions. MURRAY was a signatory for the Lab Tess account ending in -9808 at Financial Institution #1, which account he opened in the Middle District of Florida and used to receive reimbursement for false and fraudulent claims submitted to the HRSA COVID-19 Uninsured Program.

### B. Scheme and Artifice

12. Beginning in or about December 2020, and continuing through in or about September 2022, in the Middle District of Florida, and elsewhere, the defendant,

WILLIE F. MURRAY JR.,

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises relating to material facts.

### C. Manner and Means

13. The manner and means by which the defendant sought to accomplish the scheme and artifice included, among others, the following:

    a. It was part of the scheme and artifice that the defendant would and did incorporate Lab Tess LLC with the Florida Division of Corporations.

    b. It was further part of the scheme and artifice that the defendant would and did maintain and operate a public website, that is, Labtess.com, and various social media accounts, to give the false appearance that Lab Tess was operating a medical testing laboratory.

    c. It was further part of the scheme and artifice that the defendant would and did open and maintain a Lab Tess LLC Financial Institution #1 account ending in -9808 for the purpose of receiving reimbursement funds from the HRSA COVID-19 Uninsured Program.

    d. It was further part of the scheme and artifice that the defendant would and did apply for an account with HRSA, including by submitting a W-9, Request for Taxpayer Identification Number and Certification, and a voided check from the Lab Tess LLC Financial Institution #1 account ending in -9808.

    e. It was further part of the scheme and artifice that the defendant would and did attest that he had reviewed and agreed to comply with the HRSA COVID-19 Uninsured Program's required terms and conditions to be eligible for reimbursement from HRSA.

      f.     It was further part of the scheme and artifice that the defendant would and did attest that he had reviewed and agreed to comply with various terms and conditions when submitting patient claims, including that health care coverage had been checked, the patient was uninsured, and no other payer would reimburse for COVID-19 testing or care for the patient.

      g.     It was further part of the scheme and artifice that the defendant would and did certify via acceptance of the HRSA COVID-19 Uninsured Program's terms and conditions, among other things, that:

          i.     Items and services for the patients identified on the claim form were performed;

          ii.     All items and services for which payment was sought were medically necessary as a preventative vaccination for COVID-19, or for care or treatment of COVID-19 and/or its complications, and/or for COVID-19 testing and/or testing-related items and services;

          iii.     To the best of the submitter's knowledge, patients identified on the claim form were uninsured individuals at the time the services were provided; and

          iv.     All claims were true, accurate, and complete.

      h.     It was further part of the scheme and artifice that the defendant would and did submit, and cause to be submitted, patient rosters to HRSA, and

through the submission of these patient rosters, made materially false and fraudulent representations, including, but not limited to:

    i.    That COVID-19 tests had been administered to individuals who in fact had never received such services; and

    ii.    That the tested individuals' personal identifying information ("PII"), including each person's name, date of birth, gender, social security number, state of residence, and/or state identification/driver's license to verify patient eligibility, was correct, when in fact the individuals' PII was used without the patients' knowledge or consent (the "PII Victims").

    i.    It was further part of the scheme and artifice that the defendant would and did submit, and cause to be submitted, over 126,000 false and fraudulent claims to the HRSA COVID-19 Uninsured Program for reimbursement that included the means of identification of PII Victims who did not receive COVID-19 testing services, including PII Victims incarcerated by the Florida Department of Corrections, PII Victims purportedly tested at homeless shelters and electrical substations, and PII Victims who were deceased.

    j.    It was further part of the scheme and artifice that the defendant would and did cause HRSA COVID-19 Uninsured Program reimbursements for the false and fraudulent claims to be deposited into a Lab Tess LLC Financial Institution #1 account ending in -9808.

k. It was further part of the scheme and artifice that the defendant would and did use, and cause to be used, the HRSA COVID-19 Uninsured Program reimbursements for his own personal enrichment and the enrichment of others.

l. It was further part of the scheme and artifice that the defendant would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the scheme and artifice and the acts performed in furtherance thereof.

### D. Execution of the Scheme and Artifice

14. On or about the date set forth below in each count, in the Middle District of Florida and elsewhere, the defendant,

WILLIE F. MURRAY JR.,

knowingly and intentionally executed the aforesaid scheme and artifice by transmitting and causing to be transmitted by means of wire and radio communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds as set forth below:

| COUNT | DATE OF OFFENSE (on or about) | DESCRIPTION OF WIRE TRANSFER |
|---|---|---|
| ONE | February 17, 2022 | Defendant caused a wire transfer in the amount of $163,268.89 in HRSA COVID-19 Uninsured Program funds to be sent from outside the state of Florida to a Financial Institution #1 account ending in -9808 in the name of Lab Tess LLC within the Middle District of Florida |

| COUNT | DATE OF OFFENSE (on or about) | DESCRIPTION OF WIRE TRANSFER |
|---|---|---|
| TWO | February 28, 2022 | Defendant caused a wire transfer in the amount of $216,968.31 in HRSA COVID-19 Uninsured Program funds to be sent from outside the state of Florida to a Financial Institution #1 account ending in -9808 in the name of Lab Tess LLC within the Middle District of Florida |
| THREE | March 7, 2022 | Defendant caused a wire transfer in the amount of $174,497.34 in HRSA COVID-19 Uninsured Program funds to be sent from outside the state of Florida to a Financial Institution #1 account ending in -9808 in the name of Lab Tess LLC within the Middle District of Florida |
| FOUR | April 12, 2022 | Defendant caused a wire transfer in the amount of $310,159.02 in HRSA COVID-19 Uninsured Program funds to be sent from outside the state of Florida to a Financial Institution #1 account ending in -9808 in the name of Lab Tess LLC within the Middle District of Florida |

| COUNT | DATE OF OFFENSE (on or about) | DESCRIPTION OF WIRE TRANSFER |
|---|---|---|
| FIVE | April 13, 2022 | Defendant caused a wire transfer in the amount of $642,442.88 in HRSA COVID-19 Uninsured Program funds to be sent from outside the state of Florida to a Financial Institution #1 account ending in -9808 in the name of Lab Tess LLC within the Middle District of Florida |
| SIX | April 14, 2022 | Defendant caused a wire transfer in the amount of $338,277.44 in HRSA COVID-19 Uninsured Program funds to be sent from outside the state of Florida to a Financial Institution #1 account ending in -9808 in the name of Lab Tess LLC within the Middle District of Florida |

In violation of 18 U.S.C. § 1343.

## COUNTS SEVEN THROUGH NINE
### (Aggravated Identity Theft)

1. The allegations contained in Sections A and C of Counts One through Six of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2. On or about the date set forth below in each count, in the Middle District of Florida, and elsewhere, the defendant,

WILLIE F. MURRAY JR.,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, the Social Security number and name,

as detailed below, during and in relation to federal violations of 18 U.S.C. § 1343 (wire fraud), knowing that such means of identification belonged to an actual person.

| COUNT | APPROXIMATE DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| SEVEN | April 18, 2021 | The Social Security number and name of A.A. |
| EIGHT | April 21, 2021 | The Social Security number and name of B.M. |
| NINE | April 21, 2021 | The Social Security number and name of C.A. |

In violation of 18 U.S.C. §§ 1028A and 2.

## FORFEITURE

1. The allegations contained in Counts One through Six of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1343, the defendant,

WILLIE F. MURRAY JR.,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such violation.

3. The property to be forfeited includes, but is not limited to, the following:

a. an order of forfeiture in the amount of approximately $5,671,611.74, which represents the amount of criminal proceeds the defendant obtained as a result of the commission of the offenses;

b. $1,578,925.56 seized from JP Morgan Chase Bank account ending in 9808, held in the name of Lab Tess, LLC;

c. The real property located at **27150 Sunnybrook Rd, Punta Gorda, FL 33983**, including all improvements thereon and appurtenances thereto;

d. The real property located at **2200 NW 22nd St, Fort Lauderdale, FL 33311**, including all improvements thereon and appurtenances thereto;

e. The real property located **657 Dr MLK Jr Blvd W, Belle Glade, FL 33430**, including all improvements thereon and appurtenances thereto;

f. The real property located **700 W Avenue A 1, Belle Glade, FL 33430**, including all improvements thereon and appurtenances thereto;

g. The real property located **2031 Aspen Rd, Punta Gorda, FL 33982**, including all improvements thereon and appurtenances thereto;

h. The real property located **1104 N 62 Ave, Hollywood, FL 33024**, including all improvements thereon and appurtenances thereto; and

i. The real property located **106 SW 10th Ave, South Bay, FL 33493**, including all improvements thereon and appurtenances thereto.

4. If any of the property described above, as a result of any acts or omissions of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property, which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Gregory D. Pizzo
Assistant United States Attorney

By: _____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section